NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0294n.06

No. 12-3374

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
*Mar 25, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| KEVIN R. WEINER, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS and WHITE, Circuit Judges; McCALLA, District Judge[*]

**JON P. McCALLA, District Judge**. The United States District Court for the Southern District of Ohio sentenced Defendant-Appellant Kevin R. Weiner to 210 months of imprisonment after he pled guilty to attempted sexual coercion and enticement of a minor by computer in violation of 18 U.S.C. § 2422(b). The Presentence Investigation Report calculated Defendant's offense level at 35 and Defendant's criminal-history score at I, resulting in a sentencing range of 168 to 210 months. In calculating the offense level, Probation included three "pseudo counts" based on pre-charge sexual contact between Defendant and three minors, identified as Victims No. 1, 2, and 3. At sentencing, the district court adopted Probation's calculation of the offense level and sentencing range and sentenced Defendant to the maximum sentence within the range after hearing victim-impact testimony from the mother of one of the "pseudo count" victims.

---

[*]The Honorable Jon P. McCalla, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

On appeal, Defendant challenges the 210-month sentence on the basis that the guideline range was incorrectly calculated and, as a result, the sentence is procedurally unreasonable. Additionally, Defendant asks this Court to determine whether the district court considered improper victim-impact testimony and whether the case should be reassigned to a different judge for resentencing. The Government concedes that Defendant's sentence is procedurally unreasonable.

For the reasons that follow, we VACATE the sentence and REMAND to the district court for resentencing; AFFIRM the district court's consideration of testimony from the mother of one of the "pseudo count" victims at the sentencing hearing; and DENY Defendant's request to remand this case to a different judge for resentencing.

## I. BACKGROUND

On January 27, 2011, investigators were searching the internet for persons targeting minors for sex. An investigator saw an ad titled "older looking to suck younger m4m west side," which was later determined to have been posted by Defendant-Appellant Kevin R. Weiner ("Defendant"). The body of the ad clarified that Defendant was seeking to perform oral sex on a male under the age of twenty-one. The investigator responded to the ad, posing as a 14-year-old male. Defendant responded, telling the fictitious 14-year-old male that he could go to jail for "messing with him." In further communications, Defendant engaged the fictitious 14-year-old male in conversations about sex and expressed an interest in meeting the fictitious 14-year-old male and engaging in oral sex with him. Defendant and the fictitious 14-year-old male made plans to meet at the Steak 'n Shake at Feder Road and Evans Way Court in Columbus, Ohio. When Defendant pulled into the parking lot at 6:45 p.m., he was taken into federal custody.

In a subsequent interview, Defendant admitted that he posted the ad seeking oral sex with a person under the age of twenty-one; that he had been chatting with the fictitious 14-year-old male; that he told the fictitious 14-year-old male that he liked to perform oral sex; that he told the fictitious 14-year-old male that the furthest they would have gone—sexually—was to perform oral sex on one another; and that he arranged a meeting between himself and the fictitious 14-year-old male with the intent that they would engage in oral sex.

After Defendant's arrest, investigators identified three males—Victims No. 1, 2, and 3—who indicated that Defendant engaged in prohibited sexual conduct with them while they were minors. Victim No. 1 revealed that, five to six years earlier, when he was approximately thirteen years old, he was spending the night at Defendant's residence with friends and woke up to find Defendant's hand inside his pants masturbating him. Victim No. 2, a 13-year-old male, revealed that, over the course of the prior year, Defendant fondled his genitals on several occasions and performed oral sex on him on at least one occasion. Victim No. 3 revealed that, eight to nine years earlier, when he was approximately eleven years old, he spent the night at Defendant's residence with a relative on four or five separate occasions, and Defendant performed oral sex on him and placed Victim No. 3's hand on Defendant's penis. Defendant admitted to having touched Victim No. 3's penis through his bathing suit when Victim No. 3 was approximately fourteen or fifteen years old. Defendant denies that he performed oral sex on Victim No. 3 during the time period alleged by Victim No. 3.

Defendant agreed to plead guilty to a single-count Information charging him with attempted coercion and enticement in violation of 18 U.S.C. § 2422(b). In exchange for his plea, the Government agreed not to file additional charges against him based on other conduct that had

occurred prior to the date of the Information that could be construed as relevant conduct in the Southern District of Ohio.

A Presentence Investigation Report ("PSR") was prepared by Probation to assist the district court in sentencing. Defendant made the following five objections to the original PSR: (1) the district court should accept the Plea Agreement and the recommendations of the parties (a 10-year/120-month sentence) and reject the PSR's inclusion of a cross-reference under U.S.S.G. § 2G1.3(d)(1), the multiple count rule; (2) the district court should reject the use of the multiple count grouping rules and U.S.S.G. § 2G1.3(d)(1) since Defendant only pled to a single-count Information; (3) the district court should reject the 2-level enhancement under U.S.S.G. § 2G1.3(b)(1)(B) for a minor in the custody of a defendant; (4) the district court should determine that the evidence does not support Victim No. 3's assertion of oral sex and that Victim No. 3 is not credible; and (5) the district court should reject the 8-level enhancement under paragraph 62 of the PSR for sexual contact with a victim (Victim No. 3) under the age of twelve.

The fifth objection was resolved in Defendant's favor and a final PSR was prepared. The Probation Officer ("Probation") calculated a base level of 28, pursuant to U.S.S.G. § 2G1.3 for Count 1, adding two additional points because the offense involved the use of a computer to entice a minor to engage in prohibited sexual conduct, resulting in an adjusted base level of 30. Probation, having determined that Defendant's sexual conduct with Victims No. 1, 2, and 3 constituted "relevant conduct" under U.S.S.G. § 1B1.3, used the same base offense level of 28 from U.S.S.G. § 2G1.3 for each of the three additional "pseudo counts" that reflected the pre-charge sexual

conduct with Victims No. 1, 2, and 3.[1]  Applying the special-offense characteristics based on the

specific facts of each "pseudo count," Probation calculated the adjusted offense levels as 34 for

Victim No. 1, 32 for Victim No. 2, and 34 for Victim No. 3.  Using the multiple-count adjustment

rules in Chapter 3, Part D, Probation arrived at a combined adjusted offense level of 38.  Probation

then subtracted 3 levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, resulting in

a total offense level of 35.  Probation calculated a sentencing range of 168 to 210 months based on

Defendant's offense level of 35 and Defendant's criminal-history category of I.

Defendant re-registered his first four objections to the original PSR and registered an

additional objection to the offense-level total in the final PSR.  Probation responded, stating that

"[a]ccording to § 2G1.3(d)(1), if the offense involved more than one minor, the multiple count rules

are applied as if the persuasion and enticement to engage in prohibited sexual conduct of each victim

had been contained in a separate count of conviction."  Probation defined the offense of conviction

as a pattern of prohibited sexual activity with minor males and defined "relevant conduct" under

U.S.S.G. § 1B1.3(a)(2) as all acts that were part of the same course of conduct or common scheme

as the offense of conviction.  Probation asserted that the offense level was correctly calculated given

---

[1]"Pseudo counts" are created for conduct that is part of the same offense, or conduct relevant to the offense, that is not grouped with the offense of conviction but calculated as a separate count under the sentencing guidelines.  *See* U.S.S.G. § 2G1.3(d)(1) ("If the offense involved more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the persuasion, enticement, coercion, travel, or transportation to engage in a commercial sex act or prohibited sexual conduct of each victim had been contained in a separate count of conviction."); *see also* U.S.S.G. § 2G2.1(d)(1); U.S.S.G. § 2G1.1(d)(1); U.S.S.G. § 1B1.2(d)(1).

the fact that the pre-charge sexual conduct with Victims No. 1, 2, and 3 was part of the same common scheme as the offense of conviction.

At the sentencing hearing on March 14, 2012, the district court discussed the PSR with Defendant. Finding no objections to the factual statements in the PSR by either Defendant or the Government, the district court adopted the statements in the PSR as findings of fact. The district court then addressed Defendant's objections to the PSR. Defendant's fundamental objection was to the use of additional "pseudo counts" involving Victims No. 1, 2, and 3 in calculating the offense level.

The district court overruled Defendant's first objection that the district court should abide by the sentencing range of 120 to 168 months agreed to by the parties in the plea agreement. The district court noted that the plea was not pursuant to Rule 11(c)(1)(C) and thus the district court was not bound by its terms.

The district court overruled Defendant's second objection to the use of multiple-count grouping rules pursuant to U.S.S.G. § 2G1.3. The district court agreed with Probation that it was appropriate to treat Defendant's conduct with Victims No. 1, 2, and 3 as being the subject of separate counts of conviction (i.e., "psuedo counts") under U.S.S.G. § 2G1.3(d)(1).

The district court overruled Defendant's third and fourth objections as to the use of special-offense enhancements in the calculations regarding Victims No. 1 and 3, as well as Defendant's objection based on the lack of credibility of Victim No. 3. As noted, the PSR was revised to delete the initial 8-level enhancement for sexual contact with a minor under the age of twelve.

The district court found that Probation had correctly calculated the advisory range as 168 to 210 months. The Government stood by its recommendation of a sentence between 120 to 168 months as contemplated by the plea agreement.

After discussing Defendant's objections and the recommendations as to Defendant's sentence, the district court addressed the 18 U.S.C. § 3553(a) factors and the impact of Defendant's actions on Victims No. 1, 2, and 3. The district court described Defendant's "related conduct" with Victims No. 1, 2, and 3 as "nothing short of the most egregious that I've seen." The district court then allowed victim-impact testimony from the mother of Victim No. 2. The mother read aloud a letter she had previously submitted to Probation and the district court, the content of which had been incorporated into the PSR. Defendant did not object to the use of the victim-impact testimony in the PSR or at the sentencing.

The district court then asked Defendant if he wished to allocute. Defendant apologized to the victims and their families. The district court imposed a sentence of 210 months, the maximum under the Guidelines, and a period of supervised release of 15 years.

## II. ANALYSIS

### A. Standard of Review

As a general rule, we review a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Tolbert*, 668 F.3d 798, 800 (6th Cir. 2012). "A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Byrd*, 689 F.3d 636, 639–40 (6th Cir. 2012) (citing *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011)). A "district court's interpretation of the

Sentencing Guidelines is reviewed *de novo*." *Id.* (citing *United States v. Anglin*, 601 F.3d 523, 526 (6th Cir. 2010)). We review sentencing determinations, however, using a deferential abuse-of-discretion standard. *See United States v. Robinson*, 669 F.3d 767, 773 (6th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

**B. Defendant's Sentence Is Procedurally Unreasonable.**

Defendant argues that the 210-month sentence imposed by the district court is procedurally unreasonable, and that the case must be remanded for resentencing because the district court miscalculated his offense level, which resulted in an incorrectly calculated sentencing range. We agree.

Criminal sentences must be procedurally reasonable. *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012). In order for a sentence to be procedurally reasonable, the district court must not have committed a "significant procedural error, such as . . . failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Gray*, 692 F.3d 514, 521 (6th Cir. 2012) (alteration in original) (quoting *United States v. Martinez*, 588 F.3d 301, 324 (6th Cir. 2009)) (internal quotation marks omitted).

"If the district court misinterprets the Guidelines or miscalculates the Guidelines range, then the resulting sentence is procedurally unreasonable." *Byrd*, 689 F.3d at 639 (quoting *Stubblefield*, 682 F.3d at 510) (internal quotation marks omitted). Where a district court makes a mistake in calculating the sentencing range, this court is required to remand for resentencing "unless [it is] certain that any such error was harmless—i.e., any such error 'did not affect the district court's

selection of the sentenced imposed.'" *United States v. Duckro*, 466 F.3d 438, 446 (6th Cir. 2006) (quoting *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2006)).

Defendant argues that the sentencing-range calculations adopted by the district court were incorrectly calculated, resulting in an "advisory guideline range significantly higher than it should have been." Defendant contends that the inclusion of three "pseudo counts" for Defendant's pre-charge sexual conduct with Victims No. 1, 2, and 3 as "relevant conduct" constitutes reversible procedural error and that, as a result, this court should vacate the sentence and remand for resentencing. The Government agrees with Defendant that the sentencing range was incorrectly calculated and that Defendant's sentence is procedurally unreasonable.

Under § 2G1.3(d)(1), if the "*offense* involved more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the persuasion, enticement, coercion, travel, or transportation to engage in a commercial sex act or prohibited sexual conduct of each victim had been contained in a separate count of conviction." U.S.S.G. § 2G1.3(d)(1) (emphasis supplied). "Offense" is defined as "the offense of conviction and all *relevant conduct* under § 1B1.3." U.S.S.G. § 1B1.1 cmt. n.1(H) (emphasis supplied). Finally, "relevant conduct" is defined as: (1) acts or omissions committed by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility" for the conviction offense, U.S.S.G. § 1B1.3(a)(1)(A); or (2) acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction" for those offenses that require grouping of multiple counts pursuant to § 3D1.2(d), U.S.S.G. § 1B1.3(a)(2).

The district court and Probation interpreted "relevant conduct" to include Defendant's pre-charge sexual conduct with Victims No. 1, 2, and 3. In Probation's response to Defendant's first objection, Probation based its interpretation on the conclusion that the pre-charge sexual conduct with Victims No. 1, 2, and 3 was "part of the same course of conduct or common scheme or plan as the offense of conviction," and that the common plan was to participate in prohibited sexual conduct with minors over an eight-year time span. The district court adopted this reasoning, holding that all of the "minor victims were the victims of prohibited sexual conduct."

We conclude, however, that Defendant's pre-charge sexual conduct with Victims No. 1, 2, and 3 does not fall within the definition of "relevant conduct." The determination by a district court of conduct as "relevant" under U.S.S.G. § 1B1.3(a) "involves the application of law to fact and is reviewed *de novo*." *United States v. Long*, 457 F. App'x 534, 540 (6th Cir. 2012) (citing *United States v. Maken*, 510 F.3d 654, 657 (6th Cir. 2007)). Additionally, the Sentencing Guidelines are interpreted using "the traditional canons of statutory interpretation." *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011). "The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *Id*. (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)) (internal quotation marks omitted).

The definition of "relevant conduct" under § 1B1.3(a)(2) used by Probation and the district court is not applicable in this case. Under § 1B1.3(a)(2), the definition of relevant conduct applies to only those "offenses of a character for which § 3D1.2(d) would *require* grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2) (emphasis supplied). United States Sentencing Guideline § 2G1.3 Commentary Note 6, states that, for the purposes of § 2G1.3(d)(1), multiple counts involving more

than one minor are *not* to be grouped together under § 3D1.2. *See also United States v. Cade*, 452

F. App'x 47, 48 (2d Cir. 2011) (noting that under § 2G1.3(d)(1), "multiple counts involving more

than one minor are not to be grouped together under § 3D1.2").

Even if § 2G1.3(d)(1) allowed the grouping of multiple counts involving more than one

minor under § 3D1.2, grouping would still be inappropriate under § 3D1.2(d). Section 3D1.2(d)

provides two lists: one list of the offenses that are required to be grouped, and one list of the

offenses that are specifically excluded from grouping. Section 2G1.3 does not fall within either list.[2]

Pursuant to § 3D1.2, counts involving "substantially the same harm" are grouped together

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d). Offenses not listed in § 3D1.2(d) may or may not be grouped "based upon the

facts of the case and the applicable guidelines." *Id*. "Counts involving offenses to which different

offense guidelines apply are grouped together under subsection (d) if the offenses are of the same

general type and otherwise meet the criteria for grouping under this subsection." U.S.S.G. § 3D1.2

cmt. n.6; *see also United States v. Lacefield*, 250 F. App'x 670, 678 (6th Cir. 2007) (citing U.S.S.G.

§ 3D1.2 cmt. n.6).

---

[2]The Government states in its brief that "U.S.S.G. § 2G1.3 falls within the list of offenses that are not to be grouped, as do all offenses involving prohibited sexual conduct with a minor." Section 2G1.3, however, unlike § 2G1.1 and § 2G1.2, is not included in the list of offenses that are specifically excluded from grouping under § 3D1.2(d).

Since § 2G1.3 does not fall under the list of those offenses required to be grouped, grouping is appropriate only if the offenses could be considered of the "same general type." The district court concluded that the definition of "relevant conduct" under § 1B1.3(a)(2) was applicable because the offense of conviction and the "pseudo counts" could be grouped under § 3D1.2(d). In this case, however, grouping under § 3D1.2(d) would not be appropriate. The offense of conviction and the "pseudo counts" are factually dissimilar; they did not involve the same victim, they did not occur contemporaneously, they involved discrete incidents, and they were carried out by different means.

Additionally, unlike the offenses that must be grouped under § 3D1.2(d), the aggregate harm in this case cannot be quantitatively "measured." Application Note 6 gives examples of cases in which the harm can be aggregated:

> (1) The defendant is convicted of five counts of embezzling money from a bank. The five counts are to be grouped together. (2) The defendant is convicted of two counts of theft of social security checks and three counts of theft from the mail, each from a different victim. All five counts are to be grouped together. (3) The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together. (4) The defendant is convicted of three counts of unlicensed dealing in firearms. All three counts are to be grouped together.

U.S.S.G. § 3D1.2 cmt. n.6. The aggregate harm of Defendant's federal offense under 18 U.S.C. § 2422(b) and the "pseudo counts" cannot be measured in the way that harm described in the above examples can be measured. Grouping is not appropriate under § 3D1.2 and, as a result, the definition of "relevant conduct" under § 1B1.3(a)(2) was incorrectly applied in this case.

Defendant's pre-charge sexual conduct with Victims No. 1, 2, and 3 also does not constitute "relevant conduct" under § 1B1.3(a)(1)(A). Defendant pled guilty to the use of the internet to entice

a minor to engage in prohibited sexual conduct pursuant to 18 U.S.C. § 2422(b). First, none of the pre-charge sexual conduct with Victims No. 1, 2, and 3 occurred during the commission of the conviction offense. The pre-charge sexual conduct was not contemporaneous with the use of the computer as asserted in the Information. Second, none of the pre-charge sexual conduct with Victims No. 1, 2, and 3 occurred in preparation for the offense of conviction. The pre-charge sexual conduct did not involve the use of a computer or any other facility in interstate commerce to entice a minor to engage in prohibited sexual conduct and was wholly independent of the offense of conviction. Finally, none of the pre-charge sexual conduct with Victims No. 1, 2, and 3 occurred in an attempt to avoid detection. The pre-charge sexual conduct occurred prior to the conviction offense. The district court, therefore, erred in finding that Defendant's pre-charge sexual conduct with Victims No. 1, 2, and 3 constituted "relevant conduct" under § 1B1.3(a)(1)(A). *See United States v. Davis*, 453 F. App'x 452, 462 (5th Cir. 2011) (holding that defendant's pre-charge sexual conduct with a minor did not constitute "relevant conduct" under § 1B1.3(a)(1)(A)).

As a result, the pre-charge sexual conduct with Victims No. 1, 2, and 3 should not have been included as additional separate "pseudo counts" under § 2G1.3(d)(1). Additionally, the district court's error was not "harmless." Had the offense level been correctly calculated, the sentencing guideline range would have been 70 to 87 months with a mandatory minimum sentence of 120 months rather than 168 to 210 months. Accordingly, we vacate Defendant's sentence and remand this case with instructions to the district court to conduct a second sentencing hearing consistent with this opinion.

**C. Testimony by the Mother of One of the Victims Was Not Improperly Considered.**

Defendant argues that the district court erred in considering victim-impact testimony from the mother of one of the victims. Defendant contends that the testimony should not have been considered as victim-impact testimony for sentencing purposes and, on remand, should not be considered at resentencing.

Pursuant to Federal Rule of Criminal Procedure 32, a district court must give any crime victim who is present the opportunity to be heard before sentencing. Fed. R. Crim. P. 32(i)(4)(B). "Victim" is broadly defined as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e). Additionally, where the victim is under eighteen years of age, the legal guardian may assume the crime victim's rights and be given an opportunity to be heard as if the guardian was the victim. *Id*.

Defendant contends that the district court erroneously considered the victim-impact testimony of a person who did not meet the definition of a "crime victim" under Federal Rule of Criminal Procedure 32(i)(4)(B) and 18 U.S.C. § 3771(e). Defendant asserts that none of the pre-charge victims constitute "victims" of the conviction offense because the pre-charge sexual conduct does not constitute "relevant conduct" and does not constitute a "federal offense." Given this, Defendant argues that the mother of one of the victims cannot be considered a "crime victim" under Rule 32 because she was not directly or proximately harmed, and she was not the legal guardian of a minor who was directly or proximately harmed by a federal offense.

The Government argues that Defendant failed to preserve the issue for appellate review because he did not raise an objection to the inclusion of the victim-impact testimony at the

sentencing hearing. As a result, the Government argues that the plain-error standard governs Defendant's claim that the district court erroneously considered the victim-impact testimony of a person who did not meet the definition of a "crime victim" under Rule 32(i)(4)(B) and 18 U.S.C. § 3771(e).

In order for a litigant to preserve an issue of error for appeal, the litigant "must object . . . in a timely manner [or] his claim for relief from the error is forfeited." *Puckett v. United States*, 556 U.S. 129, 134 (2009). If a litigant does not timely object, the issue is forfeited and this court can only review the claim under the plain-error standard. *Id.*; *see also United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010). In order to satisfy the plain-error standard, a litigant bears the burden of showing: "(1) error[,] (2) that was obvious or clear[,] (3) that affected defendant's substantial rights[,] and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012) (quoting *Wallace*, 597 F.3d at 802) (internal quotation marks omitted). The plain-error standard of review is extremely deferential to the sentencing judge. *See Wallace*, 597 F.3d at 804.

In the instant case, Defendant failed to object to the inclusion of the victim-impact testimony from the mother of one of the victims. In failing to timely object to the use of this testimony, Defendant forfeited this claim and thus his claim is subject to the deferential plain-error standard of review.

Defendant has not offered any evidence showing that the district court committed plain error. Even assuming that the district court committed error in characterizing the mother as a "crime victim," Defendant cannot show that the district court committed plain error in considering the

statement of the mother. First, the fact that 18 U.S.C. § 3771 requires the court to consider victim-impact testimony does not mean that the district court cannot hear from other individuals at sentencing. Under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Courts are thus permitted under this section to "consider the widest possible breadth of information about a defendant." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011). In the instant case, the testimony of the mother of Victim No. 2, Defendant's most recent victim, was relevant to the background, character, and conduct of Defendant as well as the 18 U.S.C. § 3553(a) factors that Congress expressly instructed district courts to consider at sentencing.

Additionally, under U.S.S.G. § 6A1.3, the minimum standard of reliability for evidence presented in sentencing proceedings is that the evidence has "sufficient indicia of reliability to support its probable accuracy." *United States v. Hunt*, 487 F.3d 347, 352 (6th Cir. 2007) (quoting U.S.S.G. § 6A1.3(a)) (internal quotation marks omitted). Defendant admitted to the facts underlying his pre-charge sexual contact with Victims No. 1, 2, and 3 during his plea colloquy and also did not object to the statement of facts regarding pre-charge acts as to Victims No. 1 and 2 during the sentencing. As a result, the mother's testimony regarding the pre-charge sexual contact with her son was sufficiently reliable to be considered by the district court during sentencing.

Although the district court may not have been required to hear the testimony of the mother of Victim No. 2, the district court was within its discretion to consider the testimony of the most recent victim's mother during sentencing. Since it is clear that the consideration of such testimony

did not affect Defendant's substantial rights, we affirm the district court's consideration of the mother's testimony.[3]

**D. Defendant's Case Should Not Be Reassigned to a Different Judge for Resentencing.**

Defendant requests that we reassign this case to another judge on remand for resentencing. Defendant contends that under *United States v. Gapinksi*, 422 F. App'x 513 (6th Cir. 2011) ("*Gapinski III*"), the factors for reassignment favor reassignment in this case.

Defendant asserts that the sentencing judge received information that should not have been considered—namely, the information about Victims No. 1, 2, and 3 in the PSR—and that it is unlikely that the sentencing judge would be able to put the information out of his mind and not give it excessive weight in resentencing. In support of this assertion, Defendant points to the following statements made by the sentencing judge that Defendant claims demonstrate that the judge was particularly moved by the victim-impact statements in the PSR: that the conduct described in the victim-impact statements was "nothing short of the most egregious that I've seen;" and "I'm just a judge on the secular court so I can't stand in judgment of the kind of person that you are, but I do hope that you will receive whatever help is necessary that will enable you to function appropriately in society once you are released from incarceration." Defendant argues that the combination of these statements and the sentencing judge's exposure to improper information indicate that "there is little

---

[3]Insofar as Defendant argues that the district court afforded improper weight to the mother's testimony, this issue is premature. Given that the sentence was not procedurally reasonable and must be vacated and remanded for resentencing, the claim that improper weight was given to this testimony in sentencing Defendant is moot pending the resentencing.

reason to think that . . . remand would cause the judge to disavow his previously expressed views about the case," the result of which would be the appearance of unfairness.

The Government argues that there is no need to reassign to another judge. It argues that the sentencing judge was within his discretion in considering the victim information contained in the PSR as information pertinent to Defendant's character, history, and conduct. As a result, there is no improper information that the sentencing judge would have to put out of his mind in resentencing Defendant.

Additionally, the Government asserts that Defendant's reliance on *Gapinski III* is unfounded. In *Gapinski III*, this court ordered reassignment of the case to a different judge only after the case had twice been remanded to the same district judge. *See United States v. Gapinski*, 561 F.3d 467 (6th Cir. 2009) ("*Gapinski II*"); *United States v. Gapinski*, 226 F. App'x 592 (6th Cir. 2007) ("*Gapinski I*"). The Government asserts that reassignment was only appropriate in *Gapinski III* because the district judge had not considered or explained his reasons for rejecting the request for a lower sentence after *Gapinski I*; the district judge had imposed an identical sentence after this court's remand in *Gapinski II*; the record demonstrated that on remand after *Gapinski II*, the district judge made statements indicating that he had difficulty ignoring his previous views ("Okay. I've reviewed it, I've reconsidered it, and I'm not going to change."); and that the record demonstrated that on remand after *Gapinski II*, the district judge questioned the wisdom of the substantive law this court directed him to apply.

The following factors govern whether a case should be reassigned on remand:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*John B. v. Goetz*, 626 F.3d 356, 365 (6th Cir. 2010) (quoting *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006)) (internal quotation marks omitted). Reassignment is an extraordinary power, so reassignments "are rare and should be made reluctantly." *Id*. at 365.

In the instant case, there is no need to reassign to a different judge for resentencing. The record does not demonstrate that the sentencing judge would have difficulty in conducting a de novo sentencing of Defendant. *See United States v. Garcia-Robles*, 640 F.3d 159, 168 (6th Cir. 2011). First, the information about Victims No. 1, 2, and 3, while incorrectly used to calculate the sentencing guideline range, is still admissible at the sentencing hearing as information pertinent to Defendant's character, history, and conduct, as well as to the factors that must be considered pursuant to 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3661. Second, the sentencing judge's statements cited by Defendant are insufficient to suggest that the judge will be unable to revisit the matter with an open mind. Third, even though the sentencing judge used an incorrectly calculated sentencing range based on the PSR, the sentencing judge sentenced Defendant within what he believed the guidelines to be. Fourth, unlike the district judge in *Gapinski III*, the sentencing judge in this case has not been given an opportunity to correctly sentence Defendant under the correctly calculated guidelines and the judge has not shown any resistance to reconsidering the sentence on remand. Finally, since the sentencing judge is familiar with this case, it would be wasteful and duplicative to assign this case to another judge for resentencing.

Accordingly, we deny Defendant's request for reassignment to a different judge on remand.

## III.  CONCLUSION

For the foregoing reasons, we VACATE the sentence and REMAND to the district court for resentencing; AFFIRM the district court's consideration of the victim-impact testimony at the sentencing hearing; and DENY Defendant's request to remand to a different judge for resentencing.